UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH TURNER, et al.,

    Plaintiffs,

Case No. 1:12-cv-1095

v.

HON. PAUL L. MALONEY

RICK SNYDER, et al.,

    Defendants.

_____/

## OPINION

Plaintiffs are four individuals whose names appeared on Michigan's Central Registry of Child Abuse and Neglect ("Central Registry") between 2010 and 2012. Plaintiffs filed this lawsuit alleging that the Central Registry violates due process, and seek declaratory and injunctive relief against Defendants. The matter is before the Court on Defendants' motion to dismiss, or in the alternative, motion for summary judgment. (ECF No. 36.) Plaintiffs have filed a response (ECF No. 40)[1] and Defendants have filed a reply (ECF No. 41). Upon careful review of the record, the Court has decided that the motion can be resolved without oral argument. *See* W.D. Mich. LCivR 7.3(d). For the reasons that follow, Defendants' motion is granted.

### I.

The Central Registry is a database containing information on individuals who have committed child abuse or neglect. It is maintained by Michigan's Department of Health and Human Services ("Department") and is used to keep a record of all reports filed with the Department in which evidence of child abuse or neglect is found by a preponderance of the evidence. Mich. Comp.

---

[1] Plaintiff Mary Jones is appearing *pro se* and did not file a response to Defendants' motion.

Laws § 722.622(c). The Central Registry is not available to the public; rather, only certain, qualified individuals may access it. Mich. Comp. Laws § 722.627(2).

A person listed on the Central Registry may request that the Department remove his or her name. Mich. Comp. Laws § 722.627(5). If the Department does not do so, he or she may request an administrative hearing to determine whether his or her name will remain on the Central Registry. Mich. Comp. Laws § 722.627(6). At the hearing, the local office and the listed individual present arguments, witnesses, and evidence to an Administrative Law Judge ("ALJ") who determines, by a preponderance of the evidence, whether the report or record should be amended or expunged from the Central Registry. *Id.* The ALJ reviews the evidence, makes findings of fact, and issues a final decision. If the ALJ affirms the Department's action, the listed individual has a right to appeal to the circuit court. Mich. Comp. Laws § 24.306.

In this case, Plaintiffs were placed on the Central Registry after reports of child neglect. Plaintiffs allege that they have suffered from the stigma of being labeled as a child abuser, and that they suffered financially or a loss of freedom because of their placement on the Central Registry.

During the course of this lawsuit, Plaintiffs Stempien and Turner were removed from the Central Registry. (Exs. A, B, ECF No. 36.) The two remaining, Plaintiffs Jones and Mahala, had administrative hearings to challenge their placement on the Central Registry.[2] (*Id.* at Exs. C, D.)

Defendants previously filed a motion to dismiss or, in the alternative, a motion for summary judgment (ECF No. 14), and the Court stayed the case pending the outcome of a Michigan Court of Appeals case, *Nicastro v. Michigan Department of Human Services*, No. 304461, 2013 WL 5338526,

---

[2] Plaintiff Miller has voluntarily dismissed her claims with prejudice in exchange for the opportunity to regain her foster-care license. (Or., ECF No. 33.)

at *6 (Mich. Ct. App. Sept. 24, 2013), which raised similar constitutional claims.[3]  In November 2014, the Court lifted the stay (ECF No. 34) and Defendants filed this motion to dismiss and/or motion for summary judgment[4] in lieu of an answer (ECF No. 36).

## II.

Defendants filed a motion to dismiss under Rule 12(b), or alternatively, a motion for summary judgment under Rule 56.  (ECF No. 36.)  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  Thus, because the Court will consider matters outside of the pleadings, it will construe this as a motion for summary judgment.

The Federal Rules of Civil Procedure require the Court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In considering a motion for summary judgment, "the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir.

---

[3] The Michigan Court of Appeals remanded the case on other grounds and declined to address the constitutional claims.

[4] Although the title to the motion indicates Defendants request relief under Rule 12(b) and Rule 56, Defendants reference Rule 56 only once in the motion, noting that to the extent that the Court relies on the exhibits attached to its motion, the motion becomes one for summary judgment.  (Def.'s Mot. 1, ECF No. 36, PageID.354.)

2007)). Nonetheless, a "plaintiff must do more than rely merely on the allegations of her pleadings or identify a 'metaphysical doubt' or hypothetical 'plausibility' based on a lack of evidence; [a plaintiff] is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits[.]'" *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (quoting Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586-87). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

### III.

Defendants raise two arguments for dismissal: mootness and failure to state a claim for a procedural due process violation.[5] First, Defendants argue that the Court lacks jurisdiction because there is no live or redressable injury, so Plaintiffs' claims are moot. Second, Defendants argue that the Department provided adequate post-deprivation procedure, satisfying due process requirements.

**A. Plaintiffs' Claims Are Moot**

Article III of the Constitution limits the federal courts to adjudicating actual cases or controversies. U.S. Const. Art. III, § 2. A plaintiff's personal interest in the litigation must exist at the beginning of the suit and continue throughout the course of litigation. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 170 (2000. The Supreme Court has described mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the

---

[5] Defendants also argue that the case should be dismissed under Federal Rule of Civil Procedure 41(b) because Plaintiffs' counsel failed to timely file a response. (ECF No. 41, PageID.532.) Plaintiffs' counsel filed the response 14 minutes after the Court's deadline in its January 26, 2015 order (ECF No. 39). The Court deems Plaintiffs' response as timely.

commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* (quoting *Arizonans v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). Thus, cases that "do not involve actual, on-going controversies are moot and must be dismissed for lack of jurisdiction." *Campbell v. PMI Food Equip. Grp. Inc.*, 509 F.3d 776, 782 (6th Cir. 2007).

A case becomes moot when it no longer presents a live controversy or the parties lack a cognizable interest in the outcome. *Laidlaw*, 528 U.S. at 212 (Scalia, J., dissenting). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Thus, a case is moot where interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

"It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Laidlaw*, 528 U.S. at 189 (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). There are circumstances in which the prospect that a defendant will engage in or resume harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness. *Id.* at 170. The standard for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. *Id.* at 189 (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)). The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. *Id.* To succeed, Defendants must prove that (1) there is no reasonable

expectation that the alleged violation will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *Davis*, 440 U.S. at 631.

Defendants argue that the case is moot because Plaintiffs Turner and Stempien have been removed from the Central Registry, and Plaintiffs Jones and Mahala have received timely post-deprivation administrative hearings, so there is no live controversy or redressable injury. (Def.'s Mot. 10, ECF No. 36, PageID.363.) Plaintiffs Mahala, Turner, and Stempien argue that they have a continuing interest to change Michigan's registry law, so the case is not moot. (Pl.'s Resp. 2, ECF No. 40, PageID.516.) But a general interest in changing the law is not enough to maintain a live case or controversy; Plaintiffs must continue to have a personal stake in the outcome. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478 (1990) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)); *see also Singleton v. Wulff*, 428 U.S. 106, 113 (1976) ("[F]ederal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of third persons not parties to the litigation.").

Plaintiff Mahala also contends that she can still obtain equitable relief because her name is still listed on the Central Registry; likewise, Plaintiffs Turner and Stempien argue that the case is not moot because of Mahala's continuing interest. They cite several cases in support, but the cases are inapposite. *See Rumsfeld v. Forum for Academic Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006) (finding FAIR had associational standing to bring the lawsuit on behalf of its members); *Horne v. Flores*, 557 U.S. 433, 445-47 (2009) (discussing whether plaintiffs had standing); *Cutter v. Wilkinson*, 544 U.S. 709, 712 n.1 (2005) (noting that the case was not moot because a live controversy remained among the still-incarcerated petitioners and declining to reach the question as to whether un-incarcerated petitioners presented an actual controversy).

Every order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail . . . the acts or acts restrained or required." Fed. R. Civ. P. 65(d).  Plaintiffs do not seek sufficiently-detailed injunctive relief to satisfy Rule 65's requirements.[6]  Rather, Plaintiffs request a general "obey the law" injunction, which the Court cannot sustain.  *See E.E.O.C. v. Wooster Brush Co. Emp. Relief Ass'n*, 727 F.2d 566, 575 (6th Cir. 1984) (quoting *Payne v. Travenol Labs., Inc.*, 565 F.2d 895, 897-98 (5th Cir. 1978) (noting that Rule 65's command of specificity reflects the serious consequences that may flow from a violation of an injunctive order, and such "obey the law" injunctions cannot be sustained)).

Moreover, although Plaintiffs seek equitable relief, the Court cannot provide such relief to Plaintiffs Turner, Stempien, and Jones because the Department has already removed their names from the Central Registry.  Further, as discussed *infra*, because the Department has already provided Plaintiff Mahala with constitutionally-adequate procedures to protect her due process rights, she no longer has a continuing interest in litigation. *See Sayler v. Weinberger*, 377 F. Supp. 788, 791 (E.D. Mich. 1974) (noting that a later evidentiary hearing renders moot a due-process claim for failure to provide a pre-deprivation hearing).  There is no live controversy or redressable injury; thus, Plaintiffs' claims are moot.  In addition, there is no reasonable expectation that the alleged violation will recur and the interim relief–removal or an administrative hearing–has completely and irrevocably eradicated the effects of the alleged violation.

---

[6] Plaintiffs request declaratory judgment that the Central Registry is unconstitutional as applied and also request a permanent injunction against the State of Michigan from maintaining any name currently on the list unless it can provide the individuals with pre- and post-deprivation procedures.  Under *Ex Parte Young*, 209 U.S. 123, 155-56 (1908), a federal court can only issue prospective injunctive and declaratory relief compelling a state official to comply with federal law.  *See also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *S&M Brands Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008).  There is no need for such relief.

### B. Michigan's Central Registry Does Not Violate Due Process

To show that Plaintiff Mahala no longer has a continuing interest, the Court must address the merits of her due process claim. Procedural due process imposes constraints on governmental decisions that deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). It is well-established that "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

**1. There is no cognizable liberty or property interest**

When alleging a procedural due process violation, a party must first show that it was deprived of a property or liberty interest protected by due process. *Bd. of Regents v. Roth*, 408 U.S. 564, 570-71 (1972). Stigma or reputational damage alone do not rise to the level of protected due process interests. *Paul v. Davis*, 424 U.S. 693, 712 (1976) (holding that the interest in reputation is neither liberty nor property guaranteed against state deprivation without due process of law); *Mertik v. Blalock*, 983 F.2d 1353, 1362 (6th Cir. 1993). To trigger due process protection, a party must show the loss of "a right or status previously recognized by state law" in addition to reputational harm, which is known as the "stigma plus" test. *Cutshall v. Sundquist*, 193 F.3d 466, 479 (6th Cir. 1999) (citing *Paul*, 424 U.S. at 711). But merely hypothetical or speculative loss is not enough. *Cutshall*, 193 F.3d at 479-80; *see also Med Corp. v. City of Lima*, 296 F.3d 404, 414 (6th Cir. 2002); *Hodge v. Jones*, 31 F.3d 157, 168 (4th Cir. 1994).

Defendants argue that Plaintiffs merely allege a reputational harm. Plaintiffs assert that, in addition to stigma, they have also lost employment and educational opportunities. Plaintiffs allege

8

that, because the Central Registry is not confidential, a listing "amounts to a 'life sentence' of being labeled a child abuser that adversely impacts employment and education, charity and child-rearing." (Am. Compl. 2, ECF No. 9, PageID.51.)

There is no fundamental right to employment. *See Cutshall*, 193 F.3d at 479-80 (noting that "[a] change that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation"); *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999) ("[T]he liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation."). Courts recognizing a constitutionally-protected right to employment have done so in very limited circumstances: terminations of government employment where either state law or an agreement between the parties purports to limit the ability of the government to terminate the employment. *Id.* Likewise, there is "no right to a government benefit, such as public employment[.]" *Elrod v. Burns*, 427 U.S. 347, 360 (1976) (but noting that there are some reasons upon which the government may not rely to deny benefits).

Plaintiff Mahala alleges that she cannot complete her education to become a human services worker and that she will not be allowed to enroll in a bachelor's degree program once she receives her associate's degree. (Am. Compl. 19, ECF No. 9, PageID.68.) But the Central Registry listing does not limit the ability of listed individuals to seek and obtain any type of employment. *See Cutshall*, 193 F.3d at 479. Although Plaintiff Mahala alleges a loss of employment and educational opportunities, she has not identified any legal entitlement to such employment or education. Michigan law restricts access to the Central Registry; the Department may only share this

information if it involves a volunteer opportunity or employment that involves "contact with children." *See* Mich. Comp. Laws § 722.627.  Therefore, she is not prevented from seeking or obtaining any type of employment or educational opportunities, but only those that involve child contact.  Because Plaintiffs have failed to show that the "governmental action taken . . . deprived the individual of a right previously held under state law," Plaintiffs have failed to show a deprivation of a protected liberty or property interest.  *Paul*, 424 U.S. at 708.

### 2. The Central Registry process passes *Mathews* balancing

Even if Plaintiffs had alleged a protected property or liberty interest, a pre-deprivation hearing is not always required to comport with due process. *Mathews*, 424 U.S. at 349 (discussing that in only one case, *Goldberg v. Kelly*, 397 U.S. 254 (1970), has the Supreme Court required a pre-deprivation hearing because full relief could not be obtained at a post-deprivation hearing).  To determine whether the Department satisfied due process, the Court must consider: (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of such interest through procedures used; (3) the probable value, if any, of additional or substitute procedural safeguards; and (4) the government's interest, including function involved and fiscal and administrative burdens that additional or substitute procedural requirements would entail.  *Id.* at 335.

Courts considering similar state laws that place a person's name on a central registry before a hearing have found that the laws satisfy due process.  *See Shearer v. Leuenberger*, 591 N.W.2d 762, 768 (Neb. 1999), *rev'd on other grounds*, *Simon v. City of Omaha*, 677 N.W.2d 129 (Neb. 2004) (placement of name on central registry without hearing does not violate due process where parties have the opportunity for a post-deprivation expungement hearing); *Watso v. Colorado Dep't of Soc. Servs.*, 841 P.2d 299, 304 (Colo. 1992) (central registry providing for post-deprivation

10

hearing satisfies due process); *Johnston v. Michael Shea & Assoc.*, 425 N.W.2d 263, 270 (Minn. Ct. App. 1988) (finding no constitutional violation where allegation of abuse substantiated, without a hearing, solely on basis of investigation); *Roth v. Reagen*, 422 N.W.2d 464, 469 (Iowa 1988) (central registry affects no deprivation of constitutional rights).

The first *Mathews* factor–the private interest affected–weighs in favor of heightened procedural protections. The private interest for Plaintiff Mahala is a monetary interest. *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003). Although the temporary deprivation of a job is typically a serious harm, Plaintiff Mahala was a student pursuing a degree in human services; she had not yet began working in the field nor did she lose her job. *See Mathews*, 424 U.S. at 340 (distinguishing in this respect between benefits "not based upon financial need" and welfare assistance "given to persons on the very margin of subsistence"). Rather, she contends that she will not be accepted into a bachelor-degree program and has incurred debt while pursuing her associate's degree. Thus, the private interest at stake here is less serious than someone who lost his or her job as a result of the listing on the Central Registry.

Second, the risk of erroneous deprivation is minimal in light of the State's procedures. Before adding a name, the allegations of abuse or neglect must be substantiated by a preponderance of the evidence through an investigation by the Child Protective Services ("CPS") worker and approved by a supervisor. After a name is listed, the individual has an opportunity to request an administrative hearing to present arguments, call witnesses, and introduce evidence. At the hearing, the Department must prove by a preponderance of the evidence that the listed individual should remain on the Central Registry. During the hearing, the individual may object to the Department's evidence and cross-examine the Department's witnesses. If the ALJ affirms the Department's

decision, then the individual may appeal to the circuit court. These procedural requirements, which are comparable to those afforded in a civil trial, minimize the risk of error.

Similarly, Michigan law places the burden on the CPS investigator and the Department to prove by a preponderance of the evidence that the allegations of abuse or neglect are true. An individual is required to receive notice that he or she has been added to the Central Registry. After the Department's denial of a request for amendment or expunction, the listed individual has 180 days to request an administrative hearing. Mich. Comp. Laws § 722.627(6). The administrative hearing itself provides trial-like protections, and afterward, the individual may appeal the decision to the circuit court. There are several procedural safeguards already in place, so the probable value of additional safeguards–like an administrative hearing after an investigation substantiating the report but before an individual's name is added to the Central Registry–is minimal. As such, the added benefit of an additional safeguard, both to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, is outweighed by its cost. *See Mathews*, 424 U.S. at 348

The final prong of the *Mathews* test concerns the State's interest in retaining the challenged procedure. The Court must consider two categories of government interest. First, the government's interest in the policy that the state action advances; and second, the government's interest in minimizing its administrative and fiscal burdens. *Chernin v. Welchans*, 844 F.2d 322, 329 (6th Cir. 1988) (citing *Mathews*, 424 U.S. at 335). Here, the State has a strong interest in protecting children from abuse and neglect. *See, e.g., People v. Cervi*, 717 N.W.2d 356 (Mich. Ct. App. 2006) (protection of children was compelling state interest), *People v. Yarbough*, 384 N.W.2d 107 (Mich. Ct. App. 1986) (same). The State also has a substantial interest in minimizing administrative

burdens. A listed person is able to seek amendment or expunction first without the need to go through a full administrative hearing, which reduces administrative and fiscal burdens on the Department.

Further, the Sixth Circuit has opined that a pre-deprivation hearing may not be required, even where there is a protected interest, depending on the level of post-deprivation process provided:

> [T]he sufficiency of pre-deprivation procedures must be considered in conjunction with the options for post-deprivation review; if elaborate procedures for post-deprivation review are in place, less elaborate pre-deprivation process may be required. In some cases, post-deprivation review may possibly be sufficient, and no pre-deprivation process is required.

*Leary v. Daeschner*, 228 F.3d 729, 742-43 (6th Cir. 2000) (internal citations omitted). Michigan law provides several post-deprivation procedures, including an administrative hearing. And all of these procedures place the burden on the Department to prove that the listed individual should remain on the Central Registry.

Likewise, other states have found that due process is satisfied where a person's name is listed on a central registry after an investigation but before an administrative hearing. *Shearer*, 591 N.W.2d at 768, 770; *rev'd on other grounds, Simon*, 677 N.W.2d 129 (placement of name on central registry without hearing does not violate due process where parties have the opportunity for post-deprivation expunction hearing); *Watso*, 841 P.2d at 304 (central registry providing for post-deprivation hearing satisfies due process); *Johnston*, 425 N.W.2d at 270 (no constitutional violation where allegation of abuse substantiated, without a hearing, solely on basis of investigation); *Roth*, 422 N.W.2d at 469 (central registry effects are not a deprivation of constitutional rights).

To contrast, courts that have found child abuse registry systems violate due process have done so on facts distinguishable from those here. *See, e.g., Valmonte v. Bane*, 18 F.3d 992 (2d Cir.

13

1994) (finding New York's listing of names where supposed by some credible evidence was constitutionally deficient); *In re T.T. v. Dowling*, 664 N.E.2d 1243 (N.Y. 1996) (finding due process violation because burden of proof in substantiating allegations was not placed on investigating agency); *Richardson v. Chevrefils*, 552 A.2d 89 (N.H. 1988); *Wilson v. State Dept. of Hum. Servs.*, 969 P.2d 770 (Colo. App. 1998) (finding due process violated because no notice was given to suspected abuser); *Matter of East Park High Sch.*, 714 A.2d 339 (N.J. Super. 1998) (finding due process violation by denial of fair administrative hearing); *Cavaretta v. DCFS*, 660 N.E.2d 250 (Ill. App. Ct. 1996) (finding due process implicated by 598-day delay in completing appeals process).

### C. The Court Declines to Issue a Declaratory Judgment

Plaintiffs' complaint also seeks declaratory judgment that Michigan's Central Registry laws are unconstitutional. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" The statute has "been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Supreme Court, however, has cautioned that "the federal courts . . . do not render advisory opinions. For adjudication of constitutional issues[,] 'concrete legal issues, presented in actual cases, not abstractions' are requisite." *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947) (quoting *United States v. Appalachian Elec. Power Co.*, 311 U.S. 377, 423 (1940)).

"A maximum of caution is necessary . . . where a ruling is sought that would reach far beyond the particular case. Such differences of opinion or conflicts of interest must be 'ripe for

14

determination' as controversies over legal rights." *Pub. Serv. Comm'n of Utah v. Wycoff Co. Inc.*, 344 U.S. 237, 243-44 (1952). Further, "[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Id.* The question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975) (internal emphasis and quotation marks omitted).

The two-principle criteria guiding the policy in favor of rendering declaratory judgments are (1) whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *Ballard v. Johnson*, No. 15-11039, 2017 WL 1151166, at *9 (E.D. Mich. Mar. 28, 2017) (citing *Grand Trunk W.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). The Court must consider the following factors when determining whether to issue a declaratory judgment:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an area for a race for *res judicata*;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citing *Grand Trunk*, 746 F.2d at 326). The *Grand Trunk* factors direct the Court to consider three things: efficiency, fairness, and federalism. *Id.* (quoting *W. World Ins. Co. v.*

15

*Hoey*, 773 F.3d 755, 759 (6th Cir. 2014)).

Considering the *Grand Trunk* factors, the Court declines to issue a declaratory judgment. Plaintiffs have not alleged a constitutionally-protected liberty interest or a due process violation. The declaratory action would not settle the controversy because Plaintiffs have been removed from the Central Registry or have received an administrative hearing. Further, the declaratory action would not serve a useful purpose in clarifying the legal relations in issue. Rather, it would serve as an advisory opinion, given the lack of a concrete legal issue. *See Ballard*, 2017 WL 1151166, at *9 (citing *Mitchell*, 330 U.S. at 89). Thus, any declaratory relief in this Court would not settle Plaintiffs' alleged controversy or clarify any legal relations currently at issue.

Finally, the Court finds that Plaintiffs' declaratory judgment request involves important public policy matters for the State. *See id.* at *10. The State has a significant interest in protecting children from situations that may pose a danger to their health, safety, and welfare. For these reasons, the Court declines to grant Plaintiffs' request for declaratory relief.

### IV.

In sum, Plaintiffs fail to demonstrate a ripe controversy: Plaintiffs no longer have a continuing interest in litigation. As such, there is no genuine dispute of material fact and Defendants are entitled to judgment as a matter of law.

A judgment will enter in accordance with this Opinion.

## ORDER

For the reasons contained in the accompanying Opinion, the Court **GRANTS** Defendants' motion for summary judgment (ECF No. 36).

**IT IS SO ORDERED.**


Dated: May 3, 2017                                    /s/ Paul L. Maloney
                                                     PAUL L. MALONEY
                                                     UNITED STATES DISTRICT JUDGE